963 So.2d 275 (2007)
In re GUARDIANSHIP OF Betty Pat GRAHAM,
Sheridan Weissenborn, Petitioner,
v.
Luke Graham, as Guardian of the Ward, Respondent.
No. 4D07-739.
District Court of Appeal of Florida, Fourth District.
August 1, 2007.
*276 Sheridan K. Weissenborn of Papy, Weissenborn, Vraspir, Paterno & Puga, P.A., Coral Gables, for petitioner.
No response required for respondent.

ON MOTION FOR REHEARING
PER CURIAM.
This court previously denied the somewhat misleading petition for writ of certiorari in this case by order. While the petition attempted to seek review of the lower court's denial of a motion to discharge an emergency, temporary guardian and to dismiss the guardianship proceedings, the petition actually sought review of the circuit court's denial of an ore tenus request to substitute counsel. The lower court did not reach the merits of the above motions because it found that counsel had no standing to bring motions on behalf of the ward.
The attorney who attempted to appear on behalf of the ward has filed for rehearing, arguing that the guardianship proceedings pending below violate the incapacitated person's right to due process of law. While this petition was filed nominally on behalf of the ward, Betty Pat Graham, the attorney who filed this petition was not permitted to represent Ms. Graham below and has not been substituted as counsel. Betty had been appointed counsel by the court following appointment of an emergency, temporary guardian. It is apparent from the proceedings in this case that the attorney who filed this petition is working on behalf of Larry Graham, one of Betty's sons.
The instant motion for rehearing cites to Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and argues that the lower court's exercise of jurisdiction over Betty's person does not comport with traditional notions of "fair play and substantial justice." We deny rehearing, but write to address the argument that Florida's continued exercise of jurisdiction in this matter violates due process.
In July 2006, while Larry and Betty were both living in Florida, Betty executed an Advanced Health Care Directive that designated Larry as her surrogate for health care decisions and purported to grant Larry broad authority over a wide range of matters relating to her health care and her property. See § 744.3115, Fla. Stat. (2006).[1] The Directive named Larry as guardian of Betty's person and property if it became necessary for any reason and gave Larry authority to seek a court decree appointing him as guardian. The Directive specifically provided that the circuit court for Palm Beach County was a court of competent jurisdiction to appoint a guardian.
On October 6, 2006, Betty's other son, Luke, executed a petition for involuntary examination of his mother under section 394.463, Florida Statutes. An examination was ordered, and the committee members *277 unanimously concluded that Betty was incapacitated and that a guardianship was required. In November 2006, a protective services investigator with the Department of Children and Families filed a petition to determine Betty's competency and an emergency petition for appointment of a temporary guardian. The petition explained that Betty was mentally ill and currently at a psychiatric facility in the Fair Oaks Pavilion on the campus of Delray Medical Center in Florida.
DCF's emergency petition for appointment of a temporary guardian further stated that Betty had an estimated $500,000 in assets, including a home in Alabama and $350,000 that was, until recently, in a Merrill Lynch account. The Merrill Lynch account had been closed, and the investigator suspected Larry had the money moved to another account. According to the petition, the two sons, Luke and Larry, appeared to be attempting to hide Betty from one another in order to get her assets in their names. The investigator explained that it had been very difficult to determine which of the two brothers had his mother's best interests at heart. Each accused the other of mental instability, lying, and greedy motives.
After speaking with both men, as well as their father, the investigator concluded that Luke was the son that wanted his mother cared for as best as possible. The investigator noted that Larry had been caught in several lies to members of DCF staff and their legal department. Larry had recently sought and obtained a power of attorney and health care surrogacy over Betty and tried to arrange for her to be moved to a locked-down Alzheimer's ward in several different locations. Each time, Larry allegedly tried to admit Betty under a pseudonym. The petition explained that Betty does not suffer from Alzheimer's and that Larry's purpose in trying to admit her to these facilities was to prevent Luke from seeing her or discovering her whereabouts.
Because the $350,000 in the Merrill Lynch account had apparently disappeared, the investigator argued that a temporary guardian was desperately needed, as well as an order freezing Betty's assets and making them unavailable to Larry, until his motives could be established. On November 8 and 9, 2006, while Betty was still residing in Florida, the court entered an order appointing an emergency, temporary guardian with plenary authority over Betty's person and property.
After the trial court appointed the guardian, Larry surreptitiously took Betty from the residence where she had been placed by the guardian and moved her to California without giving notice to the court or any of the parties. The trial court held Larry in indirect criminal contempt for removing Betty from Florida and otherwise defying the guardianship orders. Larry has refused to reveal his exact whereabouts as well as the whereabouts of his mother.
At the time of the February 8, 2007 hearing from which this petition emanates, Larry had still not revealed Betty's location despite court orders to do so. In an attempt to get Larry's attorneys to reveal Betty's location as required by a prior court order, the judge left the courtroom and then returned a few minutes later. Upon his return, however, the attorneys still refused to divulge her location in direct violation of the court's authority.
In fact, the attorney that filed this petition refused to reveal Betty's location until directly questioned and pressed by the court. Even then, the attorney revealed only the city in California where Betty was allegedly located. The attorney then argued that the court was required to dismiss the guardianship proceedings because *278 the ward could not be located after diligent search. See Fla. Prob. R. 5.680(a). When the court asked, "But we have the ability to know where the ward is; don't we?" The attorney responded, "But she's not she's notthey didn't until I divulged that." That same attorney has continued to argue in this proceeding that the guardianship proceedings must be dismissed because Betty is no longer in Florida.
The attorney attempted to appear at the hearing on Betty's behalf even though Betty had been appointed counsel by the court. The court denied the attorney's ore tenus motion to appear on Betty's behalf at the hearing. The attorney had not filed a motion to be substituted as counsel. The court agreed to schedule a hearing on a written motion to substitute, but it does not appear from the record that the attorney has ever been permitted to appear on Betty's behalf in this case. The attorney that was appointed by the court to represent Betty, as well as the guardian, objected to all the arguments made by the attorney that has initiated these proceedings.
In as far as the instant petition was seeking to quash the trial court's refusal to allow the attorney to be substituted as counsel, the court's decision did not depart from the essential requirements of law or result in a miscarriage of justice. See In re Guardianship of King, 862 So.2d 869 (Fla. 2d DCA 2003); In re Guardianship of Bockmuller, 602 So.2d 608 (Fla. 2d DCA 1992) (holding that, because the ward's right to contract had been removed by order determining her incapacity and appointing plenary guardians, she had no right to contract for counsel to represent her in any proceedings).
Despite not being legally authorized to represent Betty at this point, the attorney argued, through the petition and in this motion for rehearing, that Betty's right to due process is being violated by the continued Florida guardianship proceedings. The petition argues that Florida has lost jurisdiction over Betty because she is now in California and that the Florida guardianship proceedings must be terminated. See § 744.202, Fla. Stat. (2006) (describing proper venue for guardianship proceedings). The record in this case in no way supports petitioner's arguments.
On January 29, 2007, after Larry removed Betty from Florida to California,[2] Betty allegedly re-executed the Advance Health Care Directive. The "new" Directive had certain hand-written changes. For example, Larry's Florida address which was written on the previous Directive was scratched out and "Los Angeles, CA" (without a street address) was handwritten in. On the final page of the Directive, the statement that Palm Beach County circuit court was a court of competent jurisdiction was scratched out and "Los Angeles, CA" handwritten in its place.
The petition in this case also attached a "Florida" durable power of attorney form that was allegedly executed by Betty on January 29, 2007. The "Florida" form has all references to "Florida" scratched out and "California" handwritten in its place. Also scratched out is the provision that makes the power of attorney revocable. Handwritten in is: "this power of attorney is irrevocable."
On February 19, 2007, after the hearing at issue in this petition, Betty was examined by a psychiatrist in California who *279 allegedly determined that she was competent. It is obvious that this psychiatrist was privately-retained by Larry in reaction to the Florida court continuing the guardianship at the February 8, 2007 hearing. The psychiatrist's report notes that, despite the psychiatrist's urging that the examination should be with Betty alone, Larry was present during the examination. The report also noted that Betty might be subject to undue influence. The petition argued that these questionable documents established "conclusively" that Betty had regained competence and that the guardianship must be terminated.
In the shadow of all the above, the petitioner has filed this motion for rehearing which purports to remind this court of the requirements of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), that the exercise of in personam jurisdiction should comport with traditional notions of "fair play and substantial justice." The parties seeking relief in this court, however, have not abided by any conceivable notion of "fair play" or "substantial justice." We reject the attorney's improper attempts to circumvent the circuit court's authority by raising jurisdictional issues in this court where the attorney was not permitted to appear below.
Contrary to the motion for rehearing's argument that exercise of jurisdiction in this case is "absolutely contrary to the concept of due process" as set forth in Pennoyer and other cases, the circuit court in this case entered the guardianship order when Betty was residing in Florida and when Florida clearly had jurisdiction over Betty's person. The Directive, which Larry contends establishes his near complete control over Betty's life, specifically provides that the circuit court for Palm Beach County was a court of competent jurisdiction to enter guardianship orders. The circuit court acquired jurisdiction over Betty when the guardianship proceedings were initiated by DCF while Betty was hospitalized in Florida and when the emergency temporary guardianship was established.
Larry's improper act of subsequently removing Betty from Florida to a "secret location" cannot divest the Florida court of jurisdiction. The legitimacy of the "new" Directive and power of attorney form were not determined by the lower court, and we do not endeavor to do so here. We simply conclude that the trial court did not depart from the essential requirements of law in refusing to hear the attorney's arguments or terminate the guardianship. Florida Statutes section 744.2025(1) requires a guardian to obtain prior court approval before removing the ward from the state. Larry, who continues to assert that he is the proper guardian based on the Health Care Directive, did not obtain prior court approval and did not notify anyone that he had taken Betty to California. If a guardian cannot remove the ward from the state without prior court approval, surely Larry cannot do so under these circumstances. Termination of the guardianship on the ground that Betty was no longer located in Florida would permit Larry to benefit from his misdeed of illegally removing Betty from the jurisdiction. The lower court in this case has jurisdiction to continue with the guardianship proceedings.
The petition's argument that the court-appointed guardian was required to move for discharge at the hearing because it did not know Betty's location is patently frivolous. If a person could secrete the incapacitated ward away to another state and thereby cause termination of the guardianship, the entire purpose of having a guardianship procedure would be nullified. The equities in this case strongly call for the circuit court's continued exercise of jurisdiction. See also Nelson v. Beverly Beach *280 Props., 47 So.2d 310, 316 (Fla.1950) (stating that "when equity takes hold it should retain jurisdiction until all matters between the parties have been disposed of").
The statutes provide for termination of a guardianship upon a change in domicile of the ward where another state has appointed a guardian, but the statute requires that the change in domicile be accomplished by the legal guardian with prior approval of the court. § 744.524, Fla. Stat. (2006) (providing for termination of guardianship when the domicile of a ward has changed as provided in section 744.2025). The petition does not suggest that California has appointed a guardian for Betty and clearly the circuit court has not approved Betty's change in domicile. See also Fla. Prob. R. 5.670 (setting forth the procedure for terminating a guardianship on change of domicile of a ward and requiring the Florida guardian to file a petition for discharge); cf. In re Guardianship of Gechtman, 719 So.2d 960 (Fla. 4th DCA 1998). Even if the petition were properly brought by an attorney of record, it fails to establish any basis for termination of the guardianship.
The circuit court judge provided in his rulings that Larry could seek to be declared the guardian and try to establish the legitimacy of the Directive if he complied with the court's orders and brought Betty back to Florida. The court provided Larry the legal means through which to assert his purported rights or those he claims over Betty. Larry has apparently chosen to ignore these legitimate avenues for relief.
Because the attorney filing this petition has no standing to represent Betty, this petition should probably have been dismissed. Because the petition sought in part to review the lower court's denial of the ore tenus motion to substitute counsel, however, we asserted our discretionary jurisdiction and denied the petition.
We have not belabored the jurisdictional posture of the petition in this case as to the other issues. An order denying the motion to dismiss the guardianship proceedings would be a non-final order for which an adequate remedy was available on appeal, so certiorari jurisdiction would not lie. In re Guardianship of Anderson, 568 So.2d 958 (Fla. 4th DCA 1990). Because the order might concern venue or personal jurisdiction, however, the order could be reviewable under Florida Rule of Appellate Procedure 9.130. Because the petition alleged that the trial court lacked jurisdiction, a petition for writ of prohibition may have been an appropriate remedy. Lee v. Campion, 823 So.2d 159 (Fla. 4th DCA 2002). The claim that the court erred in refusing to permit the attorney to appear for Betty may have been reviewable via certiorari. Atl. Commercial Dev. Corp. v. Nortek, Inc., 403 So.2d 624 (Fla. 5th DCA 1981) (granting a writ of certiorari and quashing a trial court order which denied substitution of counsel).
We exercised our discretion and chose to deny the petition so the properly initiated guardianship proceedings in this matter could continue. None of the petition's arguments have merit. The motion for rehearing is denied.
WARNER, KLEIN and STEVENSON, JJ., concur.
NOTES
[1] We express no opinion as to the validity of the healthcare directive in this case, which continues to be disputed.
[2] Larry was held in indirect criminal contempt for violating the court's order imposing an emergency temporary guardianship when he removed his mother from the "geographical" jurisdiction of the court. Larry did not obtain permission from the guardian or the court before secretly moving Betty to California and keeping her location secret.