970 So.2d 438 (2007)
Laurence GRAHAM, Appellant,
v.
FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES, and Catholic Charities of The Diocese of Palm Beach, Inc., Appellees.
No. 4D07-996.
District Court of Appeal of Florida, Fourth District.
December 5, 2007.
Rehearing Denied January 4, 2008.
Joseph S. Shook of Law Office of Joseph S. Shook, Coral Gables, for appellant.
*440 Edward A. Shipe, Boca Raton, for appellee Luke Graham.
Ronald E. Crescenzo of Casey Ciklin Lubitz Martens & O'Connell, West Palm Beach, for appellee Catholic Charities of the Diocese of Palm Beach, Inc.
HAZOURI, J.
Appellant, Laurence J. Graham (Laurence Graham), appeals the following orders entered by the trial court: (1) Judgment of Guilt on Order to Show Cause Why Laurence Graham Should Not be Held in Contempt of Court; (2) Order Appointing Plenary Guardian of Person and Property Over Betty Pat Graham (Betty Graham)/Letters of Plenary Guardianship of Person and Property of Betty Pat Graham; and (3) Denial of Laurence Graham's Motion for Continuance. Luke Graham, Laurence's brother, is the only appellee who filed an answer brief in this case, in which appellee, Catholic Charities of the Diocese of Palm Beach, Inc. (Catholic Charities), joined. We reverse.
On November 8, 2005, the Department of Children and Families (DCF), filed a petition for appointment of plenary guardian, alleging that Betty Graham, Laurence and Luke Graham's mother, was incapacitated by mental illness. The petition alleged that Betty, a 61-year old woman, was presently located in a psychiatric facility in Fair Oaks Pavilion on the campus of Delray Medical Center. The petition alleged further that Betty had over $500,000 of real estate assets and $350,000 in a Merrill Lynch account. DCF claimed that Laurence and Luke Graham were trying to hide Betty from one another and get her assets in their respective names. However, DCF determined that Luke is the son who most has Betty's best interests in mind. Finally, the petition alleged that the situation is an emergency because DCF learned that the Merrill Lynch account was closed, and the money was suspected to be in Laurence's name. Simultaneously, DCF filed a petition for appointment of emergency temporary guardian, raising the same allegations.
The trial court appointed Catholic Charities as Betty's emergency temporary plenary guardian. Upon Catholic Charities' petition following its discovery that $200,000.00 was transferred from Betty's joint account with her son Laurence, made payable to "Laurence Graham ITF Betty Graham," the trial court entered an order securing Betty's assets, freezing her accounts, and directing Betty's financial institutions and accountant(s) to provide information to Catholic Charities.
Shortly thereafter, Laurence Graham filed a petition for appointment as Betty's guardian. Laurence alleged he was being denied access to Betty and was denied his right to exercise health care decisions for Betty in violation of a health care advance directive ("the Directive") executed by Betty on July 22, 2006, designating Laurence as her health care surrogate. Catholic Charities filed a verified petition for an order compelling Laurence to disclose Betty's location and show cause why he should not be held in contempt of court. The trial court granted the petition and entered an order accordingly. The order mandated that Laurence appear before the trial court on a date certain, to show cause why he should not be held in indirect criminal contempt of court. Laurence filed a response to the order to show cause, motion to dismiss order and request for statement of particulars, but did not appear before the trial court. Luke Graham filed a petition to be appointed as Betty's permanent plenary guardian. The trial court granted the petition, appointing Luke Graham as temporary plenary guardian of Betty's person and property.
*441 Thereafter, Laurence filed an emergency motion for continuance of the hearing on the petition for appointment of a permanent guardian and motion for order for rule to show cause. His counsel claimed he did not have adequate time to prepare for the hearing because he had just been retained by Laurence Graham, and there was additional evidence necessary for the court to make a meaningful determination of the issues. The trial court denied the motion for continuance. After the hearing, the trial court denied the motion to dismiss and request for statement of particulars, and entered a judgment of guilt on the order to show cause why Laurence Graham should not be held in contempt of court. Specifically, the trial court stated:
As to the merits of the alleged contempt, the Court finds that Laurence Graham is in fact in violation of the Court's Orders, voluntarily and freely, knowing at all times that he has been in violation, and having at all times the ability to comply with the Court's Orders. The Court is convinced beyond a reasonable doubt, based on the record before it, that Laurence Graham is in contempt of Court as described in the Order to Show Cause, i.e., his participation in the removal and disappearance of Betty Pat Graham from this jurisdiction and his subsequent failure to immediately disclose her location, in violation of this Court's Order Appointing Emergency Temporary Guardian (dated November 8, 2006) and the Letters of Emergency Temporary Guardianship (dated November 9, 2006), both of which delegated plenary emergency temporary guardianship powers to Catholic Charities of the Diocese of Palm Beach Inc.
The trial court scheduled sentencing, and ordered Laurence Graham to appear in person with Betty Graham at that time.
At the sentencing hearing, the trial court withheld sentencing for 90 days. The trial court encouraged the parties to determine what is best for Betty during that time and "revise these proceedings with the Court in its guardianship capacity rather than in its contempt capacity if necessary." This appeal followed.[1]
Laurence Graham argues first that the trial court erred in finding him guilty of indirect criminal contempt on two grounds: (1) the court failed to comply with the procedural requirements of Florida Rule of Criminal Procedure 3.840; and (2) there was no evidence that he violated a court order. Because we agree with the first ground, we do not reach the second.
Failure to strictly follow the dictates of Rule 3.840, governing indirect *442 criminal contempt, constitutes fundamental, reversible error. Hagan v. State, 853 So.2d 595, 597 (Fla. 5th DCA 2003).
Laurence Graham argues that the trial court's order is based upon a statement from Catholic Charities, which is not in affidavit form and was not issued upon personal knowledge, that he did not receive notice of the contempt proceedings, and that he was not properly served. Rule 3.840(a) provides:
The judge, on the judge's own motion or on affidavit of any person having knowledge of the facts, may issue and sign an order directed to the defendant, stating the essential facts constituting the criminal contempt charged and requiring the defendant to appear before the court to show cause why the defendant should not be held in contempt of court. The order shall specify the time and place of the hearing, with a reasonable time allowed for preparation of the defense after service of the order on the defendant.
Fla. R.Crim. P. 3.840(a). We reject without comment Laurence's arguments concerning an insufficient affidavit and lack of notice, but agree with his contention that he was not properly served.
The order indicates that copies were furnished to Laurence and his attorney; however, this is insufficient service under Rule 3.840. In Giles v. Renew, 639 So.2d 701 (Fla. 2d DCA 1994), the Second District reversed an adjudication of guilt for indirect criminal contempt where the trial court and state did not strictly comply with Rule 3.840 in serving the appellant with the order to show cause. The court held: "Giles was entitled to have the order served upon him, not sent by facsimile to his attorney." Giles, 639 So.2d at 702; see also Transp. & Gen. Ins. Co., Ltd. v. Receiverships of Ins. Exch. of the Ams., 576 So.2d 1351, 1352 (Fla. 1st DCA 1991) (concluding that the trial court erred in denying appellant's motion to dismiss order to show cause in the absence of proper service of process). It is undisputed here that Laurence was not personally served with the order to show cause and thus, reversal is warranted. See Van Hare v. Van Hare, 870 So.2d 125, 127 (Fla. 4th DCA 2003) (reversing order of criminal contempt for lack of compliance with Rule 3.840).
Laurence Graham contends next that, in appointing Luke Graham as Betty's temporary plenary guardian, the trial court effectively revoked Betty's valid Directive, and did so without the necessary proof under section 765.105, Florida Statutes (2007), and without notice and a hearing, in violation of section 744.3115, Florida Statutes (2007). We agree in part.
"Statutory interpretation is a question of law subject to de novo review." BellSouth Telecomm. Inc., v. Meeks, 863 So.2d 287, 289 (Fla.2003).
Section 744.3115, Florida Statutes (2007), governing advance directives for health care, states:
In each proceeding in which a guardian is appointed under this chapter, the court shall determine whether the ward, prior to incapacity, has executed any valid advance directive under chapter 765. If any advance directive exists, the court shall specify in its order and letters of guardianship what authority, if any, the guardian shall exercise over the surrogate. Pursuant to the grounds listed in s. 765.105, the court, upon its own motion, may, with notice to the surrogate and any other appropriate parties, modify or revoke the authority of the surrogate to make health care decisions for the ward. For purposes of this section, the term "health care decision" *443 has the same meaning as in s. 765.101.
In appointing Luke Graham as Betty's temporary plenary guardian, an act which effectively revoked her Directive, the trial court failed to comply with the requirements of section 744.3115. The court failed to determine whether the Directive was valid before appointing a guardian. When the trial court appointed Catholic Charities as Betty's emergency temporary guardian, it accepted the Directive as valid, when it stated in its order: "The guardian shall not exercise any authority over any health care surrogate appointed by any valid advance directive executed by the Ward pursuant to Chapter 765, Florida Statutes, nor designate a health care surrogate pursuant to Chapter 765, Florida Statutes, except upon further order of this Court." However, when the trial court issued its letters of plenary guardianship appointing Luke as Betty's temporary guardian, it stated that Luke's authority under the letters "shall exist irrespective of any valid advanced [sic] directive executed by the Ward under Chapter 765 of the Florida Statutes." These letters essentially revoked Betty's Directive without expressing which grounds supported revocation and absent evidence of any of the grounds set forth in section 765.105. See § 744.3115, Fla. Stat. (2007).
We reject Laurence Graham's claim that he did not receive proper notice, as the letters were provided to Laurence's attorney, and there is no authority for the proposition that any specific form of notice was required.
Luke Graham argues in response that this court should interpret section 744.331(6)(b), Florida Statutes (2007), as mandating that "[a] person possessing a health care surrogate has the burden to come forward, present that instrument to the court, and permit the parties and the court to address the issue of the instrument's validity." Section 744.331(6)(b) provides:
When an order determines that a person is incapable of exercising delegable rights, the court must consider and find whether there is an alternative to guardianship that will sufficiently address the problems of the incapacitated person. A guardian must be appointed to exercise the incapacitated person's delegable rights unless the court finds there is an alternative. A guardian may not be appointed if the court finds there is an alternative to guardianship which will sufficiently address the problems of the incapacitated person.
§ 744.331(6)(b), Fla. Stat. (2007). Nothing in this section places the burden on a health care surrogate to come forward with the instrument to prove its validity, and Luke Graham asserts no authority to that effect. Moreover, section 765.202(7), Florida Statutes (2007), provides: "A written designation of a health care surrogate executed pursuant to this section establishes a rebuttable presumption of clear and convincing evidence of the principal's designation of the surrogate." Luke Graham does not argue that the Directive was not executed properly pursuant to section 765.202 and there is no evidence of such. The Directive, as it appears in the record, complies with the dictates of section 765.202, and thus it "establishes a rebuttable presumption of clear and convincing evidence" of Betty's intent to designate Laurence as her health care surrogate. Accordingly, no authority mandates that Laurence come forward and establish the validity of the Directive.
Therefore, we reverse and remand on this issue for a determination by the trial court of whether Betty's Directive is valid, and if so, what grounds under section 765.105 require its revocation.
*444 After finding Laurence in contempt, the trial court found that Betty's incapacity was established and appointed Luke Graham as her temporary plenary guardian. Laurence claims the trial court erred in doing so without sufficient evidence of Betty's incapacity pursuant to section 744.331, Florida Statutes. We agree.
A trial court's ruling on mental capacity cannot be disturbed "unless the evidence shows it is clearly erroneous." Fleming v. Fleming, 352 So.2d 895, 898 (Fla. 1st DCA 1977) (citing Waterman v. Higgins, 28 Fla. 660, 10 So. 97 (1891)). "In the adjudicatory hearing on a petition alleging incapacity, the partial or total incapacity of the person must be established by clear and convincing evidence." § 744.331(5)(c), Fla. Stat. (2007). Further, section 744.331(5)(a), Florida Statutes (2007), states:
Upon appointment of the examining committee, the court shall set the date upon which the petition will be heard. The date for the adjudicatory hearing must be set no more than 14 days after the filing of the reports of the examining committee members, unless good cause is shown. The adjudicatory hearing must be conducted at the time and place specified in the notice of hearing and in a manner consistent with due process.
Laurence Graham relies on LeWinter v. Guardianship of LeWinter, 606 So.2d 387 (Fla. 3d DCA 1992), which is analogous to the instant case. In LeWinter, the Second District reversed a finding of incapacity and the appointment of a guardian, concluding that there was no competent evidence to support the order. The court found that although the report of the examining committee established under section 744.331(3)(a) contained findings that the ward lacked the capacity to perform the functions that served the basis for the guardianship, it was filed over six weeks before the hearing, and there was evidence that the ward's condition had improved in the meantime. LeWinter, 606 So.2d at 388.
Similarly, in the instant case, two of the three examining committee reports were filed two months or more before the hearing. The hearing took place on February 8, 2007. One report was filed on November 21, 2006, and another on December 8, 2006. Further, Laurence Graham submitted a sworn affidavit dated January 20, 2007, from Dr. Clyde Rouse Jr., who was Betty's previous psychiatrist for 2 years, and again evaluated her in January 2007, stating that Betty's condition had improved. Dr. Rouse claimed, inter alia: "She looks very well and shows no evidence of any psychiatric symptoms. She reviewed her health care advance directive with me and verbally acknowledged that she had named her son Larry as her surrogate in that document." He also stated that her condition improved due to medication and in his opinion she "is perfectly competent to make financial decisions, to execute any legal documents such as power of attorney, health care advance directives, etc." Notably, a report by Dr. David Trader, board certified in general psychiatry and geriatric psychiatry, dated February 14, 2007, a few days after the hearing in question, indicated that "[t]he present examination suggests that Betty Graham has sufficient mental capacity to make financial, medical, testamentary and general personal decisions at this time."
Because Dr. Rouse's report indicated an improvement in Betty's condition and the committee member reports were filed two months prior to the hearing, the record evidence failed to establish Betty's incapacity by clear and convincing evidence. Thus, we reverse and remand with directions *445 to dismiss the guardianship proceeding. See LeWinter, 606 So.2d at 388.
We need not reach Laurence's argument that the trial court erred in denying his motion to continue, as this argument is moot in light of the foregoing.
Reversed and Remanded with Directions.
STONE and STEVENSON, JJ., concur.
NOTES
[1] Sheridan Weissenborn (Weissenborn), Betty Graham's attorney, previously filed a petition for writ of certiorari in this court, attempting to seek review of the lower court's denial of a motion to discharge an emergency, temporary guardian and to dismiss the guardianship proceedings, but the petition actually sought review of the trial court's denial of Weissenborn's ore tenus request to substitute counsel. See Weissenborn v. Graham, 963 So.2d 275, 276 (Fla. 4th DCA 2007). The trial court had found that Weissenborn had no standing to bring motions on behalf of Betty Graham. Id. This court denied the petition, but Weissenborn filed for rehearing, arguing that the guardianship proceedings pending below violated Betty Graham's right to due process of law. Id. This court denied rehearing on the basis that Weissenborn was not properly substituted as counsel and was actually working on behalf of Laurence Graham, and thus, was not permitted to represent Betty Graham. Id. Although this court denied rehearing, it wrote to address Weissenborn's claim that Florida's continued exercise of jurisdiction in the case violates due process because Betty Graham is living in California. It concluded that "[Laurence's] improper act of subsequently removing Betty from Florida to a `secret location' cannot divest the Florida court of jurisdiction." Weissenborn, 963 So.2d at 279.