PER CURIAM.
AFFIRMED.
GROSSHANS, J., and ROBERSON, E.C., Associate Judge, concur.
COHEN, J., concurs and concurs specially, with opinion.
COHEN, J., concurs and concurs specially, with opinion.
Karl O. Koepke ("Former Husband") appeals the final order finding him in indirect criminal contempt of court in his post-dissolution action against Nancy M. Koepke ("Former Wife"). He raises two issues on appeal: (1) the trial court's failure to effectuate proper service of process pursuant to Florida Rule of Criminal Procedure 3.840(a), and (2) the insufficiency of evidence establishing willfulness.
The second argument raised is meritless. Former Husband, a practicing lawyer, has been battling with Former Wife over his payment of alimony. During the pendency of the proceeding, Former Wife sought discovery related to Former Husband's anticipated settlement of a personal injury case, in which he was expected to generate a significant award of attorneys' fees. Former Wife sought to use the award to resolve Former Husband's unpaid alimony obligation. However, after settling the personal injury case, Former Husband proceeded on a course of conduct devised to conceal from Former Wife both the settlement and his award of attorneys' fees. Ultimately, Former Husband placed a significant portion of his awarded fees[1] into an irrevocable trust to shield the monies from use for repayment of past due alimony.
The record amply supports the trial court's findings holding Former Husband in indirect criminal contempt. The court, in its well-articulated order, stated:
In this case, the Court concludes that the Defendant's responses to the discovery requests, both as a lawyer and client, were untruthful and intentionally misleading, interposed for the purpose of obfuscating and delaying Former Wife's discovery of the terms of the Settlement Agreement at Mediation. At the time the Defendant produced no settlement agreement and affirmatively stated there were no settlement agreements, there was in fact a Settlement Agreement at Mediation personally signed by the Defendant. The Court also concludes that the Defendant's intentional failure to comply with the properly issued subpoena duces tecum for trial was intended to obfuscate and delay *1279 Former Wife's discovery of the terms of the Settlement Agreement at Mediation, and to delay and hinder trial on the issues of alimony.
....
While successfully accomplishing the delay in disclosure of the personal injury case settlement, Defendant researched, planned and executed a diversion of the attorneys' fees to an irrevocable trust. The diversion effectively shielded a substantial asset that would have been available for payment of overdue, unpaid alimony and attorneys' fees/costs as appropriate. Further, it impacted the Court's ultimate analysis of the Defendant's "ability to pay." This is a financial win for the Defendant, at the cost of integrity and fairness in the justice system.
....
Lawyers are sworn to uphold principles of truth and honor in the administration of justice, and shall "never seek to mislead the judge ... by any artifice or false statement of fact or law." The Defendant intentionally violated his oath and these enduring principles that are fundamental to the integrity of our system of justice. In doing so, he disrupted the orderly administration of justice, and hindered, obstructed, delayed, and frustrated the prosecution of this case. Sanctions for contempt of court are mandated by the law and the facts of this case.
We fully agree with the trial court's conclusions on this issue and find no error.
Former Husband's argument as to service of process merits discussion. Former Husband seeks reversal of the order to show cause because a sheriff or process server did not serve him the order. I disagree.
Florida Rule of Criminal Procedure 3.840 provides in pertinent part:
A criminal contempt, except as provided in rule 3.830 concerning direct contempts, shall be prosecuted in the following manner:
(a) Order to Show Cause. The judge, on the judge's own motion or on affidavit of any person having knowledge of the facts, may issue and sign an order directed to the defendant, stating the essential facts constituting the criminal contempt charged and requiring the defendant to appear before the court to show cause why the defendant should not be held in contempt of court. The order shall specify the time and place of the hearing, with a reasonable time allowed for preparation of the defense after service of the order on the defendant.
The rule is silent as to the required method of service.
Here, Former Husband was served the order to show cause through the E-Portal System, which sent the order and a notice of electronic filing to the attorneys of record. In this case, the attorneys of record included Former Husband, his counsel, and Former Wife's counsel. Former Husband does not suggest that he was unaware of, or surprised by, either the allegations raised against him or the occurrence of the hearing. He appeared at the hearing, and both he and his counsel in the dissolution case testified.
Despite not raising this issue below, Former Husband argues that the failure to effectuate personal service of process of an order to show cause constitutes fundamental error. Former Husband relies upon *1280 Graham v. Florida Department of Children & Families, 970 So. 2d 438 (Fla. 4th DCA 2007). In Graham, the trial court appointed Catholic Charities of the Diocese of Palm Beach as the emergency temporary plenary guardian of Graham's incapacitated mother. Id. at 440. Graham allegedly removed his mother, as well as her money, from the jurisdiction of the court. Id. Catholic Charities filed a verified petition for an order compelling Graham to disclose his mother's location and to show cause why he should not be held in contempt of court. Id. The trial court's show cause order indicated that Graham and his attorney received copies of the order, to which Graham responded, but it was undisputed that Graham was not personally served with the order and did not appear before the trial court. Id. at 440, 442. On appeal, the Fourth District found that the trial court's failure to strictly comply with Rule 3.840 warranted reversal. Id. at 442 (citing Van Hare v. Van Hare, 870 So. 2d 125, 127 (Fla. 4th DCA 2003) (reversing criminal contempt order for failure to comply with Rule 3.840 )).
Unlike Graham, here, Former Husband was directly served through the E-Portal System. The plain text of Rule 3.840 does not define the nature of service. The only case that attempts to define the method of service for such orders is Giles v. Renew, 639 So. 2d 701 (Fla. 2d DCA 1994). In a footnote, Giles, a domestic relations case, relied on Florida Rule of Juvenile Procedure 8.285(b)(1), which states that an order to show cause for indirect contempt "shall be served in the same manner as a summons." Id. at 702 n.2.
In contrast, Florida Rule of Judicial Administration 2.516 mandates service via electronic filing. That rules provides in relevant part:
(b)(1) Service by Electronic Mail ("e-mail"). All documents required or permitted to be served on another party must be served by e-mail, unless the parties otherwise stipulate or this rule otherwise provides. A filer of an electronic document has complied with this subdivision if the Florida Courts e-filing Portal ("Portal") or other authorized electronic filing system with a supreme court approved electronic service system ("e-Service system") served the document by e-mail or provided a link by e-mail to the document on a website maintained by a clerk ("e-Service")....
Fla. R. Jud. Admin. 2.516(b)(1) ; see also Fla. R. Civ. P. 1.080(a) ("Every pleading subsequent to the initial pleading, all orders, and every other document filed in the action must be termed in conformity with the requirements of Florida Rule of Judicial Administration 2.516.").
It is axiomatic that strict compliance with Rule 3.840 is required and that the failure to do so raises due process concerns. Each of the five District Courts of Appeal seem to describe those due process concerns in terms of fundamental error. I am unaware of the Florida Supreme Court utilizing a fundamental error analysis in this context. As such, I am bound to follow our court's precedence in cases where a party was not served in strict compliance with Rule 3.840. Sylvester v. State, 923 So. 2d 1289, 1289 (Fla. 5th DCA 2006) (finding fundamental error where Rule 3.840 procedures were not strictly followed in criminal contempt proceeding); Hagan v. State, 853 So. 2d 595, 597 (Fla. 5th DCA 2003) ("[F]ailure to strictly follow the dictates of Rule 3.840 constitutes fundamental, reversible error." (citations omitted)).[2]
However, in the instant case, the court complied with Rule 3.840. Former Husband *1281 was both a litigant and attorney below. He was served through the E-Portal System in accordance with Florida Rule of Judicial Administration 2.516 and never challenged that service in the trial court. I do not agree that when one appears in court and fully litigates the merits of a contempt action, the nature of the service of process becomes an issue of fundamental error on appeal. E.g., D.H. v. Adept Cmty. Servs. Inc., 271 So. 3d 870, 880 (Fla. 2018) ("Fundamental errors are those which go 'to the foundation of the case or ... to the merits of the cause of action.' " (quoting Sanford v. Rubin, 237 So. 2d 134, 137 (Fla. 1970) )).
I concur in affirmance.

The portion not used to pay for his own attorneys' fees in this matter.

While I agree that because of the criminal nature of such indirect contempt issues, the full panoply of procedural safeguards should be provided and an individual's due process rights should be scrupulously honored, I question such a per se rule.